USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#:
DATE FILED: 4-29-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
GERALDO MENA,

                        Plaintiff,

    -against-

THE CITY OF NEW YORK, ET AL.,

                        Defendants.

------------------------------------------------------------- x

15-cv-3707 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Geraldo Mena (hereinafter, "Plaintiff" or "Mr. Mena") brings this action against the City of New York, Correction Officers Marin, Genoves, Ashby, Francis, Radie, Clement, and two unknown correction officers of Rikers Island.[1] Mr. Mena alleges violations of his constitutional rights under 42 U.S.C. § 1983, excessive force, and municipal liability, as well as state law claims for violations of the New York State Constitution, negligent hiring, and assault and battery.

## PROCEDURAL HISTORY

Plaintiff initiated this action on May 5, 2015. ECF No. 1. On January 13, 2016, Defendant City of New York answered Plaintiff's Complaint.[2] ECF No. 8. On November 3, 2016, the Court held a Status Conference. *See* ECF. Plaintiff's counsel indicated that he no longer represented Plaintiff, and the Court directed Plaintiff to retain new counsel by December 2, 2016. *Id.* On August 8, this case was referred to Magistrate Judge Henry B. Pitman for general pre-trial purposes. ECF No. 15. On October 5, 2017, Judge Pitman ordered Plaintiff to show

---

[1] Officer Marin (Badge #12883); Officer Genoves (Badge # Unknown); Officer Ashby (Badge #6465); Officer Francis (Badge #11823); Officer Radie (Badge #10453); Officer Clement (Badge # Unknown)
[2] The remaining Defendants filed their Answer on August 24, 2018. ECF No. 32.

COPIES MAILED

cause as to why the case should not be dismissed for failure to prosecute. ECF No. 16. On December 14, 2017, this Court dismissed this case for failure to prosecute. ECF No. 20.

On December 12, 2017, the Court received a Letter from Plaintiff indicating that he had not been receiving communications from the Court and conveying his continued desire to prosecute this case. ECF No. 19. However, the letter was not posted to the Electronic Case Filing system until December 14, 2017, and, as such, the Court had no opportunity to consider it before dismissing the case. *See* ECF No. 22. Thus, the Court issued an Order reopening the case. *Id.* The case then proceeded with discovery.

On September 6, 2018, Defendants filed a Letter Motion with the court requesting a pre-motion conference to discuss their anticipated motion for partial summary judgment. ECF No. 34. Rather than hold a pre-motion conference, the Court granted Defendants leave to file their Motion. ECF No. 35. On November 15, 2018, Defendants filed their Motion for Partial Summary Judgment along with supporting documents. ECF Nos. 39-42. Plaintiff opposed Defendants' Motion via a Letter filed on December 19, 2018. ECF No. 43. Defendants replied to Plaintiff's Opposition on January 18, 2019. ECF No. 48.

Defendants' Motion is deemed fully briefed. After careful consideration, Defendants' Motion for Partial Summary Judgment is hereby **GRANTED**.

## BACKGROUND[3]

Mr. Mena alleges that he was assaulted by officers on three different occasions. *See* Compl. On February 14, 2014, Mr. Mena alleges that he was "on the telephone in Housing Area 3 North at the Otis Bantum Correctional Center ("OBCC") on Rikers Island." Compl. ¶ 16.

---

[3] For the purposes of this Motion for Partial Summary Judgment, Defendants do not contest many of Plaintiff's factual allegations. *See* Defs'. 56.1 Stmt., ECF No. 42. Thus, the background of this case is demonstrated by the allegations in Plaintiff's Complaint.

Three or four officers approached Plaintiff and hung up the phone before he was done talking.[4] *Id.* ¶¶ 17-18. When Plaintiff asked why the officers disconnected the phone, they "pushed" Plaintiff toward the wall and told him to face the wall. *Id.* ¶ 19. Plaintiff alleges that he complied. *Id.* ¶ 20. As Plaintiff turned to face the wall, one of the officers handcuffed him, threw him to the ground, and proceeded to beat Mr. Mena with his baton. *Id.* ¶ 21. The other officers joined the beating and proceeded to "stomp" Plaintiff and strike him with their batons as Mr. Mena remained handcuffed on the ground in the fetal position. *Id.* ¶¶ 21-22. Plaintiff alleges that he was "hit at least 10 times with a baton and kicked between 10 and 20 times." *Id.* ¶ 23. Mr. Mena suffered injuries to his face, neck, and upper body. *Id.* ¶¶ 36-37. Mr. Mena claims that the attack was unprovoked and that he complied with all orders given. *Id.* ¶¶ 38-39.

Later in the afternoon on February 14, 2014, Mr. Mena claims that he had a visitor. *Id.* ¶ 41. After concluding his visit, Mr. Mena was waiting for an officer to escort him back to Main Intake. *Id.* ¶¶ 41-42. Plaintiff was met by Defendant Ashby. *Id.* ¶ 43. Plaintiff was told to put his hands on the wall, and he inquired as to why. *Id.* ¶¶ 43-44. Defendants Ashby, Francis, and Radie proceeded to throw Mr. Mena to the floor and punch him for "7 or 8 minutes." *Id.* ¶ 44. Plaintiff claims that the officers yelled, "Faggot, you like to attack officers," as they beat him. *Id.* ¶ 45. Mr. Mena claims that the second attack worsened the injuries he sustained earlier that day. *Id.* ¶ 46.

On March 23, 2014, Mr. Mena alleges that the inmates in 1 South CPSU were being served lunch. *Id.* ¶¶ 49-50. Defendant Clement placed a tray through the slot in Plaintiff's cell door, and Plaintiff asked where the bread was. *Id.* ¶ 51. Defendant Clement told Plaintiff that he would get bread for him, and Plaintiff indicated that he would hold the slot in his door open with

---

[4] Plaintiff alleges that Defendants Marin and Genoves were two of the officers involved in the attack by the telephone. Compl. ¶ 28.

his hand until Defendant Clement returned with bread. *Id.* ¶ 52. After a brief exchange, Defendant Clement "slammed the slot on Plaintiff's fingers." *Id.* ¶ 54. Despite Mr. Mena's cries for help, Defendant Clement allegedly left Plaintiff's fingers in the closed slot for 20 minutes. *Id.* ¶¶ 55-57. Plaintiff had x-rays of his hand that revealed no breaks, however his fingers remained swollen and sore. *Id.* ¶¶ 59-60.

Plaintiff also alleges that the City of New York (the "City") "violated the civil rights of males ... at Rikers Island" in a plethora of ways. *Id.* ¶¶ 63-73. Plaintiff's allegations include: that the City, (1) failed to "protect them from the rampant use of unnecessary and excessive force by correction officers;" (2) "allowed a practice, policy, custom or culture for such excessive use of force by failing to appropriately punish, reprimand, correct, and or remove officers who engaged in such unlawful use of force;" (3) failed to "properly, truthfully and completely record and report incidents of violence by correction officers against males being held at Rikers Island;" (4) failed to "implement an effective system for investigating and addressing incidents of violence by correction officers against males being held at Rikers Island;" (5) engaged in a pattern or practice of striking inmates when they posed no threat, of using excessive force because they "rarely received appropriate punishment;" (6) failed to "adequately supervise subordinates ... discipline correction officers, and ensure[] that correction officers ... are not held appropriately accountable for their actions;" and (7) failed to "properly train, supervise, discipline or retain Correction Officers." *Id.* Specifically, Plaintiff claims that the use of force by correction officers increased significantly between 2009 and 2014, and that between 2011 and 2013, correction officers at Rikers Island "seriously injured more than 90 inmates." *Id.* ¶¶ 69, 71.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

## DISCUSSION

Defendants now move for summary judgment on four of Plaintiff's Claims: the municipal liability claim; the generic 42 U.S.C. § 1983 claim; the New York state constitutional claim; and the negligent screening and hiring claim. *See* Defs'. Mem. Supp. Mot. p. 6, ECF No. 41 ("Defs' Mot."). Defendants do not move for summary judgment on Plaintiffs 42 U.S.C. § 1983 excessive force claim and any state law assault and battery claims against the individual correctional officers. *Id.*

### I. Plaintiff has Failed to Satisfy the *Monell* Standard for Municipal Liability

Plaintiff's Fifth Cause of Action alleges that Defendant City of New York is liable under the theory of *Monell* liability based on three policies and/or customs: (1) the policy and/or custom of "inadequately and improperly screen[ing]" potential employees; (2) the policy and/or custom of "allow[ing] correction officers to use excessive force"; and (3) the policy and/or custom of "inadequately and improperly train[ing] and supervis[ing]" correction officers. Compl. ¶¶ 96-98. Aside from the allegations in the Complaint, Plaintiff has produced no evidence supporting his *Monell* claims.

Local governing bodies can be sued directly under 42 U.S.C. § 1983 when a plaintiff demonstrates unconstitutional action implemented from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. Of New York*, 436 U.S. 658, 690 (1978). However, liability does not exist "solely because [a municipality] employs a tortfeasor." *Id.* at 691. Thus, a plaintiff must "plausibly allege that the violation of his constitutional rights was caused by an official policy or

custom of the municipality." *Bennett v. City of New York*, 425 Fed.Appx. 79, 81 (2d Cir. 2011) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways:

> "A plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Allan v. City of New York*, 386 F.Supp.2d 542, 549 n.3 (S.D.N.Y. 2005) (internal citations omitted); *Kucharczyk v. Westchester County*, 95 F.Supp.3d 529, 538-39 (S.D.N.Y. 2015). Here, Plaintiff's Fifth Cause of Action could be interpreted to give rise to claims under either the "custom or usage" theory or the "failure to train" theory.

To succeed on a *Monell* claim based on the "custom or usage" theory, a plaintiff may "establish municipal liability by demonstrating that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Kucharczyck*, 95 F.Supp.3d at 539. However, a plaintiff must prove that the custom at issue is "permanent and well-settled." *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). In doing so, a plaintiff's allegations must be sufficient to lead a rational trier of fact to conclude that the practice in question is "so persistent and widespread" to constitute a "custom or usage". *Ferebee v. City of New York*, 2017 WL 2930587, *10 (S.D.N.Y. July 6, 2017); *see Falls v. Campbell*, 2019 WL 1255768, *6 (S.D.N.Y. March 19, 2019) (collecting cases). "Conclusory allegations of a municipal custom or practice of tolerating official misconduct, without factual details, cannot

7

establish the existence of such a custom." *Matthews v. City of New York*, 2016 WL 5793414, *9 (S.D.N.Y. Sept. 30, 2016).

Regarding a *Monell* claim based on the "failure to train" theory, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[5] *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). In addition, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivations." *Id.* (citing *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)); *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004).

Here, the extent of the evidence supporting Plaintiff's claims of municipal liability under these two theories comes from the conclusory allegations in the Complaint. *See* Compl. ¶¶ 63-73. Plaintiff alleges that "the City of New York ... systematically violated the civil rights of males ... held at Rikers Island by failing to protect them from the rampant use of unnecessary and excessive force." *Id.* ¶ 63. Additionally, "[D]efendant City of New York allowed a practice, policy, custom or culture for such excessive use of force by failing to appropriately punish, reprimand, correct, and or remove officers who engaged in such unlawful uses of force." *Id.* ¶ 64. Plaintiff alleges that Defendant City of New York failed "to properly, truthfully and completely record and report incidents of violence by correction officers against males being

---

[5] The Second Circuit has outlined three requirements that must be met for a municipality's failure to train or supervise to constitute deliberate indifference. *See Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992). A plaintiff must show (1) that a policymaker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling situations; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007).

held at Rikers Island." *Id.* ¶ 65. Further, Plaintiff claims that the Defendant City of New York failed "to implement an effective system for investigating and addressing incidents of violence by correction officers." *Id.* ¶ 66. Plaintiff claims that unnamed inmates at Rikers Island were struck in the head, face, and body and that officers did not receive appropriate punishment despite evidence. *Id.* ¶¶ 67-68. To support his claims of systematic abuse, Plaintiff alleges that "between 2011 and 2013, the correction officers at Rikers Island seriously injured more than 90 inmates." *Id.* ¶ 69. Plaintiff also claims that "the use of force by correction officers significantly increased between 2009 and 2014." *Id.* ¶ 71. That is the extent of Plaintiff's evidence supporting his claims for municipal liability. Plaintiff provides no context for these numbers, provides no factual details or specific instances that corroborate his claims, and identifies no specific deficiency in any training program that could reasonably support a claim for municipal liability under either the "custom or usage" theory or the "failure to train theory." In this case, the allegations in Plaintiff's Complaint, without more, are insufficient for a reasonable jury to return a verdict in Plaintiff's favor regarding *Monell* liability. *See Anderson*, 477 U.S. at 248; *Jeffreys*, 426 F.3d at 553-53.

## II.  Plaintiff has Failed to State a General 42 U.S.C. § 1983 Claim

Plaintiff's First Cause of Action states that Defendants "violated Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendment." Compl. ¶ 80. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Thus, in order to state a claim under 42 U.S.C. § 1983, a plaintiff must identify which rights were violated and provide sufficient factual allegations to support those claims. *See Sforza v. City of New York*, 2009 WL 857496, *12 (S.D.N.Y. March 31, 2009); *Folk v. City of New York*, 243 F.Supp.3d 363, 370-71

(E.D.N.Y. 2017) ("Plaintiff has not identified which of her constitutional rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments were allegedly violated or specified the factual basis for the claim.") Here, Mr. Mena has failed to provide anything more than an allegation that his Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated. Compl. ¶ 80.

### III. Plaintiff's Claims under the New York Constitution Fail as a Matter of Law

Plaintiff's Fourth Cause of Action states that Defendants "violated Plaintiff's rights under Article 1, Sections 5, 6, and 12 of the New York State Constitution." Compl. ¶ 93. Plaintiff alleges, without additional detail, that he "suffered injuries" and thus claims damages. *Id.* ¶ 94. "District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution" where a plaintiff has available remedies under 42 U.S.C. § 1983. *Hershey v. Goldstein*, 938 F.Supp.2d 491, 520 (S.D.N.Y. 2013) (quoting *Campbell v. City of N.Y.*, 2011 WL 6329456, *5 (E.D.N.Y. Dec. 15, 2011)). Here, Mr. Mena has failed to allege any difference in the remedies sought under his 42 U.S.C. § 1983 claims and his claims arising under the New York State Constitution. Thus, any claims under the New York State Constitution are redundant and hereby dismissed.

### IV. Plaintiff has Failed to Allege Facts Sufficient to Sustain a Claim for Negligent Screening

Plaintiff's Sixth Cause of Action alleges that the City "inadequately and improperly screened individuals applying to become New York City Correction Officers." Compl. ¶ 102. Liberally construed, Plaintiff's claim could be interpreted as a state tort claim for negligent hiring and retention.

To state a claim for negligent hiring and retention under New York law, a Plaintiff must first demonstrate that an employee was negligent.[6] After satisfying the negligence threshold, a plaintiff must allege "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committee on the employer's premises or with the employer's chattel." *Id.* (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). In addition, "a claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." *Id.* (quoting *Perkins v. City of Rochester*, 641 F.Supp.2d 168, 174-75 (W.D.N.Y. 2009)).

Here, Plaintiff's Complaint is void of any allegation, and Plaintiff provides no evidence that the individual Defendants had a propensity to engage in excessive force that the employer knew or should have known about. Plaintiff generally alleges that inmates at Rikers Island were victims of violence at the hands of correctional officers. Compl. ¶¶ 66-67, 70-71. However, Plaintiff's Complaint contains no allegations of specific incidents that would indicate that the City knew or should have known of an individual officer's propensity for the type of conduct complained of. *See Gandarilla v. Sanchez*, 2012 WL 3525607, *9 (S.D.N.Y. Aug. 15, 2012) ("Since Plaintiff has failed to produce evidence of a propensity of which the City could have known at the time of [Defendant's] hiring, the Court grants the City's Motion for Summary Judgment with respect to the negligent hiring cause of action."); *Doe v. Alsard*, 12 F.Supp.3d 674, 680 (S.D.N.Y. 2014) ("The absence in the FAC of factual allegations concerning

---

[6] To demonstrate ordinary negligence, a plaintiff must show (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an ensuing injury as a result of the breach. *See Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)).

[employee's] propensity for sexual assault and [employer's] knowledge is fatal to Plaintiff's negligence claim.")

In addition, as stated, a claim for negligent hiring or retention cannot proceed against an employer for conduct of an employee acting within the scope of employment. *See Newton*, 681 F.Supp.2d at 487-88; *Petrec v. Hillard*, 2013 WL 5178328, *13 (S.D.N.Y. Sept. 16, 2013). Here, aside from providing no evidence that Defendants were acting outside the scope of their employment, Plaintiff specifically alleges that any and all excessive force was part of a policy or practice of the City of New York. Compl. ¶ 72. Thus, Plaintiffs allegations are insufficient to sustain a claim for negligent hiring and retention under New York law.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Partial Summary Judgment is hereby **GRANTED**.

**SO ORDERED.**

**Dated:** April 25, 2019
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

12